UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNUM LIFE INSURANCE
COMPANY OF AMERICA,

                    Plaintiff,                              Case No. 1:20-cv-1041

v.                                                          Hon. Janet T. Neff

ROBERT SCALES, ELAINE DUKE,
and, WALTER GILLEN,

                    Defendants.
_____/

## REPORT AND RECOMMENDATION

Plaintiff Unum Life Insurance Company of America ("Unum") issued a life insurance policy to Wanedia Scales (the "Decedent") through her employer, Pine Rest Christian Mental Health Services ("employer").  The life insurance policy named two beneficiaries, the Decedent's husband, Robert Scales. and the Decedent's son, Xavier Woldeab ("Xavier").  Both the Decedent and Xavier died on February 5, 2020.  The Decedent's estate is pending in the Kent County Probate Court (the "probate court").  Robert Scales has been charged with involuntary manslaughter of the Decedent.  An issue has arisen in the probate court as to whether Robert Scales is barred from receiving any portion of the Decedent's estate under Michigan's "slayer statute", M.C.L. § 700.2803.

Unum filed this interpleader action on October 29, 2020, naming three defendants: Robert Scales (the Decedent's widower); Elaine Duke (the Decedent's mother); and Walter Gillen (the Decedent's father).  This action arises under the Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1001 *et seq.* ("ERISA"), because the group insurance policy under which the

Decedent's benefits are payable was part of an employee benefit welfare plan. Jurisdiction is based upon 29 U.S.C. § 1132(e)(1).[1]  *See* Compl. (ECF No. 1).  This matter is now before the Court on Unum's motion for interpleader deposit (ECF No. 31).  The motion is unopposed.

## I.    Allegations

Unum issued its group insurance policy number 292000 to the Select Group Insurance Trust (the "Group Policy"). The employer established an employee benefit plan as defined in 29 U.S.C. § 1002(1), which provided certain life insurance coverage to its eligible employees under the Group Policy pursuant to certificate number 426677 (the certificate and Group Policy are referred to collectively as the "Plan").  *Id.*  As a benefit with the employer, the Decedent was enrolled in the Plan for basic life insurance ($35,000.00), basic accidental death and dismemberment insurance ($35,000.00), supplemental life insurance ($20,000.00), and supplemental accidental death and dismemberment insurance ($10,000.00) (collectively referred to as the "life insurance policy").  *Id.* at PageID.3.

The Decedent designated her husband, Robert Scales, as a 50% beneficiary of the life insurance policy under the Plan, and her son Xavier as a 50% beneficiary. *Id.*  With respect to beneficiaries, the Plan advised plaintiff how the benefits would be paid in the event of the death or disqualification of a named beneficiary:

> It is important that you name a beneficiary and keep your designation current. If more than one beneficiary is named and you do not designate their order or share of payments, the beneficiaries will share equally. The share of a beneficiary who dies before you, or the share of a beneficiary who is disqualified, will pass to any surviving beneficiaries in the order you designated.

---

[1] "Except for actions under subsection (a)(1)(B) of this section, the district courts of the United States shall have exclusive jurisdiction of civil actions under this subchapter brought by the Secretary or by a participant, beneficiary, fiduciary, or any person referred to in section 1021(f)(1) of this title."  29 U.S.C. § 1132(e)(1).

If you do not name a beneficiary, or if all named beneficiaries do not survive you, or if your named beneficiary is disqualified, your death benefit will be paid to your estate.

Instead of making a death payment to your estate, Unum has the right to make payment to the first surviving family members of the family members in the order listed below:

- spouse;

- child or children;

- mother or father; or

- sisters or brothers

*Id*. (quoting Plan).

At the time of her death on February 5, 2020, the Decedent was eligible for all of the benefits under the life insurance policy totaling $100,000.00. *Id*. The Employer filed a claim under the plan on or about February 12, 2020. *Id*. The circumstances of the Decedent's death could affect the distribution of the benefits under the life insurance policy. Specifically, Unum alleged: that the Decedent died from non-accidental injuries that were inflicted by another individual; that the Decedent's son Xavier died on the same day due to the same non-accidental injuries that were inflicted by another individual; that Xavier does not qualify as a surviving heir of the Decedent pursuant to M.C.L. § 700.2104; and, that Robert Scales has been charged with manslaughter for the Decedent's death. *Id*.

Unum further alleged:

18. Upon information and belief, Defendant Elaine Duke asserts that Defendant Robert Scales is not entitled to receive the insurance benefits at issue because he has been charged with involuntary manslaughter.

19. Upon information and belief, Defendant Elaine Duke intends to assert a claim for the insurance proceeds at issue.

3

20. Upon information and belief, Defendant Elaine Duke filed a Petition for Formal Proceeding Concerning Appointment of Personal Representative, Objection to Robert Keith Scales as Personal Representative, and for Removal of Robert Keith Scales as Personal Representative and Application of MCL 700.2803 with the Kent County Probate Court. . .

21. Upon information and belief, the Decedent does not have any descendants entitled to recover under MCL 700.2103(a).

22. If MCL 700.2803 is applied to Defendant Robert Scales's benefits with respect to the Decedent's estate, then Defendant Elaine Duke and Defendant Walter Gillen are equal beneficiaries pursuant to MCL 700.2103(b).

*Id*. at PageID.4-5.

Unum's complaint referenced three statutes which could affect the distribution of the policy benefits.  Michigan's "slayer statute", M.C.L. § 700.2803, provides in pertinent part as follows:

(1) An individual who feloniously and intentionally kills or who is convicted of committing abuse, neglect, or exploitation with respect to the decedent forfeits all benefits under this article with respect to the decedent's estate, including an intestate share, an elective share, an omitted spouse's or child's share, a homestead allowance, a family allowance, and exempt property. If the decedent died intestate, the decedent's intestate estate passes as if the killer or felon disclaimed his or her intestate share.

(2) The felonious and intentional killing or the conviction of the felon for the abuse, neglect, or exploitation of the decedent does all of the following:

(a) Revokes all of the following that are revocable: (i) Disposition or appointment of property made by the decedent to the killer or felon in a governing instrument. (ii) Provision in a governing instrument conferring a general or nongeneral power of appointment on the killer or felon. (iii) Nomination of the killer or felon in a governing instrument, nominating or appointing the killer or felon to serve in a fiduciary or representative capacity, including a personal representative, executor, funeral representative, trustee, or agent.

(b) Severs the interests of the decedent and killer or felon in property held by them at the time of the killing, abuse, neglect, or exploitation as joint tenants with the right of survivorship,

4

transforming the interests of the decedent and killer or felon into tenancies in common.

(c) Bars the killer or felon from exercising a power under section 3206(1).

*      *      *

(6) After all right to appeal has been exhausted, a judgment of conviction establishing criminal accountability for the felonious and intentional killing or the abuse, neglect, or exploitation of the decedent conclusively establishes the convicted individual as the decedent's killer or as a felon, as applicable, for purposes of this section. With respect to a claim of felonious and intentional killing, in the absence of a conviction, the court, on the petition of an interested person, shall determine whether, under the preponderance of evidence standard, the individual would be found criminally accountable for the felonious and intentional killing of the decedent. If the court determines that, under that standard, the individual would be found criminally accountable for the felonious and intentional killing of the decedent, the determination conclusively establishes the individual as the decedent's killer for purposes of this section.

M.C.L. § 700.2803 (footnote omitted).

Michigan's slayer statute "is derived from the common-law rules that one who commits a murder cannot benefit by his or her criminal act and that no devisee can take under the will of a testator whose death has been caused by the criminal act of the devisee." *In re Nale Estate*, 290 Mich. App. 704, 707-08, 803 N.W.2d 907 (2010). However, Michigan's slayer statute is not limited to murder. "Because voluntary manslaughter has been defined by Michigan courts as an intentional killing, and because the common law 'slayer rule' has never been limited to the crime of murder, it follows logically that MCL 700.2803 operates to prevent one convicted of voluntary manslaughter from benefiting from the estate of the decedent. *Id*. at 710. Although Robert Scales is charged with involuntary manslaughter, the probate court is not precluded from making factual findings independent of the conviction to establish that the charged individual feloniously and intentionally killed the decedent for purposes of Michigan's slayer statute. *See In*

*re Estate of Hadley*, No. 332888, 2017 WL 6542682 at *4-5 (Mich. App. Dec. 21, 2017) (citing

M.C.L. § 700.2803(6)).

Finally, while the probate court is addressing whether Michigan's slayer statute

applies to Robert Scales, there is a separate legal issue as to whether ERISA and the federal

common law "slayer rule" preempts the application of Michigan's slayer statute. *See generally*,

*Nale v. Ford Motor Co. UAW Retirement Plan*, 703 F. Supp. 2d 722 (E.D. Mich. 2010).

Unum also referred to the application of M.C.L. § 700.2103, which addresses

intestate succession in the event that part of intestate estate does not pass to a decedent's surviving

spouse:

> Any part of the intestate estate that does not pass to the decedent's surviving
> spouse under section 2102, or the entire intestate estate if there is no surviving
> spouse, passes in the following order to the following individuals who survive the
> decedent:
>
> (a) The decedent's descendants by representation.
>
> (b) If there is no surviving descendant, the decedent's parents equally if both
> survive or to the surviving parent.

M.C.L. § 700.2103 (footnote omitted).

Finally, with respect to the Decedent's son Xavier, Unum referenced M.C.L. §

700.2104, which provides that:

> An individual who fails to survive the decedent by 120 hours is considered
> to have predeceased the decedent for purposes of homestead allowance, exempt
> property, and intestate succession, and the decedent's heirs are determined
> accordingly. If it is not established by clear and convincing evidence that an
> individual who would otherwise be an heir survived the decedent by 120 hours, it
> is considered that the individual failed to survive for the required period. This
> section does not apply if its application would result in a taking of the intestate
> estate by the state under section 2105.

M.C.L. § 700.2104 (footnote omitted).

Based on Unum's allegations, it is unclear as to whether the life insurance policy benefits are payable to the remaining beneficiary (Robert Scales), the Decedent's probate estate, or the Decedent's parents (defendants Duke and Gillen). Unum's complaint asks, among other things, that it be allowed to deposit the proceeds of the life insurance policy with the Court, that the Court order the claimants to interplead and settle their respective claims, that Unum be discharged from liability as to the Decedent's benefits under the plan, that Unum be dismissed, and that the Unum be awarded attorney fees, costs, and charges related to the lawsuit. *Id*. at PageID.7-8.

On March 1, 2021, defendant Duke filed a motion to stay these proceedings, *i.e.*, "following deposit of the Unum funds and Plaintiff Unum's dismissal from the case, Defendant Duke moves for a stay of this action pending a decision by the Kent County Probate Court on the application of MCL 700.2803, Michigan's 'slayer statute.'" Motion to Stay (ECF No. 27). Defendant Robert Scales opposes this motion. The undersigned will address defendant Duke's non-dispositive motion to stay in a separate order after Unum's motion to deposit is resolved.

Defendant Duke also filed a copy of a "stipulation and order for injunction under MCL 700.1309" entered by the probate court on August 11, 2020. *See* Stipulated Order (ECF No. 28-1). Among other things, the order noted: that Robert Scales was appointed personal representative of the Decedent's estate on May 26, 2020; that Robert Scales was arraigned on four charges of involuntary manslaughter for the deaths of the Decedent and her minor children on June 18, 2020; that Robert Scales was bound over to the Circuit Court for further proceedings on July 15, 2020; that Ms. Duke filed documents to remove Robert Scales as personal representative of the estate on July 20, 2020; that Ms. Duke also sought an injunction to preserve the estate; and, that "[t]he parties, through their counsel, now stipulate to an order enjoining [Robert] Scales from

7

selling, transferring, or dissipating any Estate property or property he received as a result of Wanedia Scales' death until further Order of this Court". *Id*.

Pursuant to the stipulated order, the probate court enjoined Robert Scales from, among other things, "selling, transferring, or dissipating any asset or property that he received as a result of the death of Wanedia Lynn Scales by virtue of beneficiary designation until further Order of this Court." *Id*. at PageID.189. The probate court further stated that,

> Upon presentment of a copy of this Order, any company or entity acting as custodian of property or assets payable to the Estate, to Robert Keith Scales as beneficiary of Wanedia Lynn Scales, or to Robert Keith Scales as surviving joint owner with Wanedia Lynn Scales, shall not proceed with payment to Robert Keith Scales individually or as representative of the Estate until further Order of this Court.

*Id*. Unum was not a party to the stipulated order and there is no evidence that anyone provided Unum with a copy of the order before it filed this federal lawsuit for interpleader on October 29, 2020.

Then, on March 9, 2021, Unum filed the present motion for interpleader deposit, asking that the life insurance proceeds be deposited in this Court, that the defendants and claimants to the Decedent's estate be barred from suing Unum for the proceeds, that Unum be dismissed from this action, and that Unum's attorney fees and expenses be paid from those proceeds.

## II. Discussion

"Persons with claims that may expose a plaintiff to double or multiple liability may be joined as defendants and required to interplead." Fed. R. Civ. P. 22. "[T]he interpleader rule provides that a neutral stakeholder asserting no claim to the disputed funds and having surrendered the disputed funds to the custody of the Court should be discharged from the action." *Sun Life Assurance Co. of Canada v. Thomas*, 735 F. Supp. 730, 732 (W.D. Mich. 1990). "Interpleader

was originally designed to protect the stakeholder  .  .  .  from the vexation of multiple suits and the possibility of multiple liability that could result from adverse determinations in different courts." *First Trust Corp. v. Bryant*, 410 F.3d 842, 853, fn. 6 (6th Cir. 2005) (internal quotation marks omitted).

Given the situation in this case, it is appropriate for Unum to utilize the interpleader procedure and deposit the life insurance policy proceeds with the Court Clerk.  In reaching this determination, the Court has considered: that Unum does not contest that full benefits are payable under the policy; that there is a dispute which may affect the distribution of the policy proceeds to named beneficiary (Robert Scales); and, that there may be multiple claimants to the proceeds of the policy. Allowing Unum to deposit the policy proceeds will safeguard the proceeds for the ultimate beneficiary or beneficiaries and prevent additional litigation involving the distribution of the proceeds.  In short, Unum is the type of "neutral stakeholder" which the interpleader rule was designed to protect.

Finally, the Court needs to consider whether Unum should receive attorney fees and costs related to filing this interpleader action.  The Sixth Circuit addressed this issue in *Holmes v. Artists Rights Enforcement Corp. (AREC)*, 148 Fed. Appx. 252 (6th Cir. 2005):

> "Neither Rule 22 nor the interpleader statute contains an express reference to costs or attorney's fees."  7 Wright, Miller & Kane, Federal Practice and Procedure: Civil § 1719 (3d ed. 2001).  Nevertheless, "[a] federal court has discretion to award costs and counsel fees to the stakeholder in an interpleader action, whether brought under Rule 22 or the interpleader statute, whenever it is fair and equitable to do so."  *Id*. An interpleading party is entitled to recover costs and attorney's fees when it is (1) a disinterested stakeholder, (2) who has conceded liability, (3) has deposited the disputed funds into court, and (4) has sought a discharge from liability. *Septembertide Publishing v. Stein and Day*, 884 F.2d 675 (2d Cir.1989). The only limiting principle is reasonableness, and it is at the discretion of the Court to determine what award is appropriate. 7 Wright, Miller & Kane, *supra*, § 1719.

*Holmes*, 148 Fed. Appx. at 259.

In support of this request, Unum states:

> Here, Unum repeatedly asked the parties to allow it to deposit the Life Benefits into the Court's registry, discharge Unum from liability, and dismiss Unum from this case. Ms. Duke and Mr. Gillen agreed. (PageID.185; PageID.146.) Unfortunately, despite Unum's request, clear Sixth Circuit caselaw permitting interpleader of the Life Benefits, notice that Unum would seek its attorneys' fees if he refused to stipulate to the interpleader, and multiple follow up inquiries, Mr. Scales did not concur. (Exhibit 1.) Mr. Scales's refusal to stipulate to the interpleader of the disputed funds has unnecessarily increased Unum's legal fees. And as a disinterested stakeholder, Unum should not bear the cost of Mr. Scales's intransigence. Therefore, Unum requests that it be awarded its reasonable attorneys' fees and that it be allowed to file a motion under Rule 54 of the Federal Rules of Civil Procedure requesting an award of a specific amount of attorney's fees paid out of the Life Benefits.

Unum Brief (ECF No. 32, PageID.217).[2]  Based on the record in this case, the Court concludes that Unum is entitled to reasonable attorney fees, filing fees, and expenses related to this interpleader action because it is a disinterested stakeholder, who has conceded liability, seeks to deposit the disputed funds into court, and seeks a discharge from liability.  *See Holmes*, 148 Fed. Appx. at 259.

Accordingly, the Court concludes that Unum's motion to deposit the proceeds into this Court should be granted, that the Court should enter the proposed order submitted by Unum (ECF No. 31-1), and that Unum should be allowed file a motion for fees and costs as set forth in the proposed order.

---

[2] In reaching this determination, the Court notes that defendant Robert Scales refused to sign a stipulation agreeing to the interpleader deposit, with his attorney staking out a position in an email that, "We will never agree to any stipulation that gives the probate court jurisdiction of any mater [sic] in the federal courts. Furthermore, we do not agree to the proposed stipulation from Unum to deposit the funds with the Federal Courts."  Anthony Greene email (ECF No. 32-1, PageID.219).   While defendant Robert Scales refused to agree to a stipulation, he does not oppose Unum's motion to deposit the funds or the form of the proposed order submitted by Unum.

### III.    RECOMMENDATION

For these reasons, I respectfully recommend that Unum's motion for interpleader deposit (ECF No. 31) be **GRANTED**, that the Court enter the proposed order (ECF No. 31-1), and that Unum be **DISMISSED** from this action.

Dated:  May 24, 2021                           /s/ Ray Kent

                                              United States Magistrate Judge

ANY OBJECTIONS to this Report and Recommendation must be served and filed with the Clerk of the Court within fourteen (14) days after service of the report.  All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b).  Failure to serve and file written objections within the specified time waives the right to appeal the District Court's order.  *Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).